UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____X

In Re

    NICHOLAS RUVOLO
      & EVELINA RUVOLO,

           Debtors
_____X

Chapter 11

Case No.: 09-47924-CEC

## AMENDED DISCLOSURE STATEMENT

1.    INTRODUCTION

Pursuant to Section 1125 of title 11, United States Code (the "Bankruptcy Code") NICHOLAS RUVOLO and EVELINA RUVOLO (the 'Debtors"), provides this Disclosure Statement to all of their known creditors and other parties in interest in order to provide information deemed by the Debtors to be material and necessary to enable such creditors and parties in interest or make a reasonably informed decision in the exercise of their rights to decide whether to object or participate in the Debtor's Plan of Reorganization (the "Plan"). The Plan is annexed hereto as Exhibit "A".

The information contained in this Disclosure Statement is based on the books and records of the Debtors and is believed to be accurate. It has not been subject to a certified audit or an independent review, Therefore, no representation or warranty is made as to its accuracy or completeness. However, the Debtors have reasonably endeavored to obtain and supply all material information.

Terms utilized in this Disclosure Statement, if not defined herein, shall have the same meaning as such terms are used or defined in the Plan or the Bankruptcy Code, unless the context hereof requires a different meaning.

THE BANKRUPTCY COURT HAS SCHEDULED _____ _____, 2010 AT ____ A.M. OF THAT DAY AS THE DATE AND TIME OF THE HEARING ON CONFIRMATION OF THE PLAN AND OBJECTIONS THERETO, WHICH HEARING WILL BE HELD BEFORE CARLA E. CRAIG, CHIEF UNITED STATES BANKRUPTCY JUDGE IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK, 271 CADMAN PLAZA EAST, BROOKLYN, NEW YORK 11201. CREDITORS OF AND HOLDERS OF INTERESTS IN, THE DEBTOR MAY ATTEND SUCH HEARING. THE BANKRUPTCY COURT HAS FIXED _____, _____, 2010 AT 5:00 P.M. AS THE DATE AND TIME BY WHICH ALL WRITTEN OBJECTIONS TO CONFIRMATION OF THE PLAN SHALL BE FILED WITH THE BANKRUPTCY COURT AND SERVED UPON THE ATTORNEYS FOR THE DEBTORS AND UPON THE UNITED STATES TRUSTEE. YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT WITH COUNSEL OF YOUR CHOICE.

In Order for the Plan to be accepted, creditors who hold at least two-thirds (2/3rds) in dollar amount and more than one half (1/2) in number of the allowed claims voting in each impaired class must vote in favor of the Plan. Classes 4, 5,6, 7, and 8 are the impaired class in the plan. The creditors in these classes are impaired because some are paid over ten years without interest, others are only being paid a 5% dividend on their total claim and absent the filing of the petition and plan, those creditors would be entitled to be paid now and in full. Creditors in classes 4, 5, 6, 7 and 8 will be entitled to vote on the Plan. Other than the information set forth in this Disclosure Statement, the Debtors have authorized no person or entity to make representations concerning the Debtors, their business, their future income, the value of the Debtor's assets or the amounts to be distributed under the Plan.

The Office of the United States Trustee did not appoint a committee of unsecured creditors in this case.

## II. HISTORY OF THE DEBTORS AND THE BANKRUPTCY CASE

A. The Debtors.

The Debtors are "small time real estate investors." Their investment began on February 24, 1994 when the Debtors purchased a two family house located at 74 Kermit Place, Brooklyn, NY 11218 with a down payment of $26,000.00. On May 31, 1996, Debtors then purchased a second property located at 172 Bathgate Street, Staten Island, NY with a down payment of $5,000.00. On January 7, 2002, Debtors refinanced their property located at 74 Kermit Place, Brooklyn, New York and cashed out $150,058.00 of which $120,752.00 was used as a down payment to purchase a third property located at 207 Barlow Avenue, Staten Island, NY, which is their current residence. On May 6, 2004, the Debtors sold the property located at 172 Bathgate Street, Staten Island, NY and netted a profit of $122,971.00. Debtors later refinanced the Kermit Place property and purchased 284 Giffords Lane and 286 Giffords Lane. Debtors have since refinanced both of these properties to pay off approximately $50,000 in credit card debts and various improvements on the property. Currently, the Debtors' own four properties which each have 2 or more mortgages.

Debtors admit that prior to filing the bankruptcy that they had not paid the mortgages on all four properties for over a year. The Debtors used the monies to pay their living expenses. Debtors had to file this Chapter 11 case because the property located at 284 Giffords Lane, Staten Island, NY was scheduled for a foreclosure auction.

B. Current Operation.

Currently, all the properties are rented. Debtors currently have a monthly rent roll of $9,450.00. Debtors other source of income are social security in the amount of $2,412.00 and income from the Husband's job which recently was $4,000.00 per month. The Debtors believe that Mr. Ruvolo's job would be able to pay him approximately $5,000.00 per month because the business currently, has two contracts one for $6,000.00 per month and another for $415.00 per month. (See Exhibit B—Ruvolo potential income). The monthly overhead for the business is minimal; it averages approximately $1,000.00 per month. Currently, the Debtors have $28,000 in their DIP account and escrowed funds to be used to help

3

fund a Plan of Reorganization. Debtors are not current with their post-petition expenses. Attached herewith please find a copy of the last filed operating report. (See Exhibit C). Attached hereto as Exhibit D is the Debtors' Projected Income Statement.

    C.    <u>Significant Events during the Bankruptcy.</u>

On September 14, 2009, Debtors for Chapter 11 Bankruptcy. On February 2, 2010, the Office of the United States Trustee filed a Motion Dismiss the Case. An initial hearing was scheduled for March 30, 2010. The matter was adjourned to May 4, 2010.

## III. **SUMMARY OF THE PLAN**

The following is a summary of certain provisions of the Plan. IT IS NOT A COMPLETE STATEMENT OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO PROVISIONS OF THE PLAN. The Plan is annexed to this Disclosure Statement as Exhibit A. The Plan, which is subject to the provisions and incorporates the definitions of the Bankruptcy Code, provides for the treatment of all creditors of the Debtor. BECAUSE THE PLAN DEALS WITH COMPLEX LEGAL CONCEPTS, AND INCORPORATES THE DEFINITIONS AND REQUIREMENTS OF THE BANKRUPTCY CODE, YOU MAY WISH TO CONSULT WITH AN ATTORNEY ABOUT THIS.

    A.    <u>Summary of Classification and Treatment</u>
            <u>of Claims and Interests under the Plan</u>

The Plan classified Claims and Interests of the Debtor into eight (8) classes (the "Classes"). The Classes and payments to be made in respect of, or treatment proposed to be accorded to, Allowed Claims of each Class under the Plan and summarized and described below. The term "Allowed Claim" is defined in the Plan.

### 1. **Administrative Claims**

Administrative Claims include the claims of professionals under Sections 327 and 330 of the Bankruptcy Code ("Allowed Claims of Professionals') and the statutory fees due the Office of the United States Trustee. The Allowed Claims of Professionals will include the allowed fees and expenses of Debtors'

counsel for legal services rendered to the Debtors and its Estate in connection with this bankruptcy case.

The amount that will be payable with respect to the Allowed Claims of Professionals is not yet definitively known. The Debtors caused its attorneys to receive an initial retainer of $5,000. It is estimated the Debtors total legal fees will be approximately $20,000. The amount ultimately paid to the Debtors' attorney is subject to certain limitations contained in the Bankruptcy Code and must be approved by the Court. Any party in interest may object to the approval of such requests at any hearing before the Court on allowance of Administrative Claims. The Allowed Claims of Professionals shall be paid in full in cash on the date an order from the Court allowing such claims becomes a final and nonappealable order or at such time as may be acceptable to such professionals. Fees due the Office of U.S. Trustee will be paid in full within five (5) days of the Effective Date, if not prior thereto and additional fees that accrue through entry of the final decree will be paid.

Class 2- The Creditor in Class 2 is BAC which holds enforcement lien mortgage on the property owned by the Debtors located at 207 Barlow Avenue, Staten Island, New York 10308. On or before Confirmation of the Plan, the Debtor shall apply for a loan modification of the mortgage. This would allow the Debtor to return the loan to a current status; capitalize delinquent interest and escrow and reduce interest rate to 3%. Based on a current mortgage amount of $727,223.93 with an interest rate of 3% the new monthly payment including taxes, insurance, principal and interest would be $3,466.01. This class is unimpaired under the Plan.

Class 3- The Creditor in Class 3 is AHMSC which holds enforcement lien mortgage on the property owned by the Debtors located at 284 Giffords Lane, Staten Island, NY 10308. On or before Confirmation of the Plan, the Debtor shall apply for a loan modification of the mortgage. This would allow the Debtor to return the loan to a current status; capitalize delinquent interest and escrow and reduce interest rate to 3%. Based on a current mortgage amount of $548,036.37 with an interest rate of 3% the new monthly payment including taxes, insurance, principal and interest would be $2,710.54. This class is

unimpaired under the Plan.

Class 4- The creditor in Class 4 is US Bank which holds enforcement lien mortgage on the property owned by the Debtors located at 286 Giffords Lane, Staten Island, NY 10308. On or before June, 2020, the Debtor shall cure all defaults under the Chase mortgage and the mortgage shall be reinstated to its original terms. Chase to be paid pre-petition arrears in the sum of $36,447.60 over the next 120 months, with monthly installments of $304.00 per month to the arrears. Debtor will resume the regular monthly payments of $3,262.29. This class is impaired under the Plan.

Class 5- The creditors in Class 5 are Chase which consist of the first mortgage respectively on the property owned by the Debtors located at 74 Kermit Place, Brooklyn, NY 11218. Debtor will apply for a short sale for this property. Once the Debtors obtain a short sale for this property it would allow the Debtor to avoid any possible mortgage deficiencies. This class is impaired under the Plan.

Class 6—The creditor in Class 6 is the secured claim of the NYC Water for water and sewer charges to each of the Debtors' four buildings. NYC Water would be paid pre-petition arrears in the sum of $8,833.20 with interest of 9% over the life of the plan, with monthly installments of $74.00 per month to the arrears. This class is impaired under the Plan.

Class 7- The creditor in Class 7 is the lessor claim of GMAC for a 2008 Hummer that the Debtors intend to surrenders and reject the lease. This class is impaired under the Plan.

Class 8- consists of the general unsecured claims in this case including the unsecured mortgages of the Debtors four properties. All allowed unsecured claims shall be paid 5% dividend, in equal monthly payments $251.00 over 120 months. Currently the unsecured mortgage claims (which are the Debtors second and third mortgages which amounts to approximately- $538,749.00 and other unsecured claims of $63,597.65- currently filed unsecured proofs of claim-) which totals approximately $602,346.65. Currently, 5% of the unsecured creditors equals $30,117.33. This class is impaired under the Plan.

## B. **Classes Impaired Under the** Plan

Under Section 1126 of the Bankruptcy Code, classes of Claims or Interests which are impaired are entitled to vote on a plan of reorganization. Under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is impaired unless the plan, with respect to such class:

a.  leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or interest; or

b.  reinstates a previously accelerated Claim or Interest by (a) curing any preparation defaults (other than a default under Section 365(b)(2) of the Bankruptcy Code, (b) reinstating the maturity of such Claim or Interest as it existed prior to default, (c) compensating the holder of such Claim or Interest for damages incurred as a result of reliance on a contractual acceleration provision or similar applicable law, and (d) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holders of such Claim or Interest; or

c.  provides on the Effective Date that (a) with respect to a class of Claims, the holders of such Claims receive cash equal to the allowed amount of their Claims; and (b) with respect to a class of Interests, the holders of such Interests receive the greater of any fixed liquidation preference that they are entitled to under any security, or any fixed price at which the debtor may redeem such security pursuant to the terms of such security.

## C. **Objections to Claims**

Under Section 502 of the Bankruptcy Code, the Debtors or any interested party may file an objection to the validity, nature or amount of any Claim. Any pre-petition Claim listed as not disputed, not contingent and liquidated as to amount on the schedules and amendments, if any, that the Debtors file with the Court is deemed allowed unless an interested party files an objection. Pursuant to an Order dated April 6, 2010, (the "Bar Order") to be entered by the Bankruptcy Court, May 18, 2010 (the "Bar Date") will be fixed as the last day for the filing of proofs of Claim.

After confirmation of the Plan, the Court will retain jurisdiction to resolve, among other matters, issues relating to classifications of, and objections to, Claims.

In connection with cash distributions to be made to holders of Claims, there shall be reserved from any distribution to the holder of such Claim, the amount of cash which would be paid in respect of such Disputed Claim if the full amount of such Claim were deemed to be an Allowed Claim, or such lesser amount as the Court may determine. Pending the determination of the allowability of such Claim by the Court, an amount of cash equal to the Disputed Claim or such lesser amount as the Bankruptcy Court may have determined shall be deposited by the Reorganized Debtor within ten (10) business days (i) after the Effective Date or (ii) after such objection is interposed, whichever is later, into a non-interest bearing account maintained by Law Office of Narissa A. Joseph. Upon such Claim becoming an Allowed Claim by the Court, any cash distribution then due to be made in respect of such Claim shall be paid, within five (5) business days after such order determining the claim becomes a final non appealable order. Any moneys remaining on deposit with respect to Disputed Claims after their resolution or determination by the Court shall be distributed by the Debtor pursuant to the terms of the Plan.

## D. Distributions Under the Plan

The Plan provides further that if any person entitled to receive a distribution under the Plan cannot be located within reasonable time after the Effective Date, such distribution shall be set aside and held in a segregated non-interest bearing fund to be maintained by Law Office of Narissa A. Joseph. for the benefit of the Reorganized Debtor. If the person entitled to such distribution is located within sixty (60) days after the Effective Date, such distribution shall be paid and distributed to such person. If, however, such person cannot be located after sixty days from the date any payment is due under the Plan, such distribution shall be retained by the Debtor.

## E. Effective Date of the Plan

Section 1.19 of the Plan provides that the Effective Date shall be fifteen days after entry of an order confirming the Plan.

## iv. MEANS OF IMPLEMENTING THE PLAN

The funds required for the confirmation and performance of this Plan shall be provided from rents

collected by the Debtors in the amount of $6,700.00; the Wife's income from social security disability in the amount of $2,412.00; and the Husband's income which is approximately $5,000 to $5,500 per month. The rental income is different than the current amount as the Debtors intend to short sale one of the properties which would essentially reduce their rent roll to $6,700.00. In addition, in effort to minimize their monthly expenses Debtors have decided to surrender their leased 2008 Hummer vehicle. The Plan requires combined monthly payments of approximately $11,436.00 per month. The Debtors believe their earnings and other income would be sufficient in the future to meet their obligation. Currently the Debtors have on deposit in their DIP account and escrowed funds, approximately $28,000 to be paid towards the Plan. The Debtors have prepared a projection for their income and expenses which is annexed hereto as Exhibit "B", which indicates the debtor will have sufficient income to make the payments requested under the Plan. The Debtors will be obligated to pay to the Office of the United States Trustee, the statutory fees under 28 USC 1930(a) throughout the entire payment term until entry of the final decree. The fees have also been budgeted in the projections. The Debtor shall make an initial **distribution** to Classes 4, 5, 7, 8 within thirty days of the Effective Date, of the accumulated funds, less the court approved administrative expenses.

## V. EXECUTORY CONTRACTS AND LEASES

The Debtor is the lessee of a 2008 Hummer from GMAC It is a 36 month lease, which provides for monthly payments of $1,159.00 per month. The Debtor is current on the lease and intends to reject the lease upon confirmation.

## VI. LIQUIDATION ANALYSIS

The Debtor does own four parcels of any real property. These properties each has two and three mortgages and have no value as they are considered "under water." All of the Debtors personal property is of minimal value and exempt from creditors claims thereby, there is no property to liquidate for the benefit of creditors.

As a result the 5% distribution proposed for all Unsecured Claims is more than creditors would receive in the event the case was converted to a Chapter 7 liquidation. In the event the case was dismissed, it is unlikely the general unsecured creditors would receive any payments.

## VII. <u>PREFRENCES</u> <u>AND FRAUDULENT</u> <u>CONVEYANCES</u>

The Debtors does not believe it has made any pre-petition payments which could be considered preferential. The Debtors represents that no debt repayments other than payments on credit cards in the ordinary course were made to any relatives, partners, present or former business associates, or close friends within one year prior to the petition date. The Debtors and its counsel discussed the Debtors' business affairs for the six years prior to the petition date, including an oral review of all transfers of significant assets, if any. Based upon the information provided by the Debtors to their counsel, the Debtors were advised that it could represent that there are no fraudulent conveyances. To the extent this paragraph discloses a discussion between the Debtors and counsel, it is not intended to be a waiver of the attorney-client privilege.

## VIII. <u>ACCEPTANCE AND CONFIRMATION OF THE PLAN</u>

### A. <u>Confirmation Hearing</u>

The Bankruptcy Court will set a date and time for a hearing to determine whether the Plan has been accepted by the requisite numbers of creditors and interest holders and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor and interest holder will receive notice of the confirmation hearing.

### B. <u>Requirements for Confirmation</u>

In order to confirm the Plan, Section 1129 of the Bankruptcy Code requires the Court to make a series of determinations concerning the Plan, including:

i) the Plan classifies Claims and interests in a permissible manner;

ii)  the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code;

iii) the proponent of the Plan has proposed the Plan in good faith;

iv) the Plan proponent's disclosures concerning the Plan have been adequate and have included information concerning all payments and distributions to be made in connection with the Plan; and

v)  that the requisite number of classes and claims within such classes have voted in favor of confirmation.

The debtors believe that all of these conditions have been met or will be met by the time of the hearing on confirmation of the Plan, and will seek a determination of the Court to this effect at the hearing on confirmation.

Pursuant to the Plan, the Debtors reserve the right to modify or withdraw the Plan in its sole and absolute discretion prior to the Confirmation Date and it thereafter may modify the Plan in accordance with Section 1127 of the Bankruptcy Code.

## C. __Acceptance Necessary for Confirmation__

The Bankruptcy Code requires that the Plan be accepted by requisite votes of creditors and interest holders, except to the extent that "cram down' is available under Section 1129(b) of the Bankruptcy Code. The Bankruptcy Code further requires that the Plan be feasible. This means that confirmation of the Plan is not likely to be followed by the liquidation of, or further reorganization by, the Debtor.

The Bankruptcy Code also requires that the Plan place each creditor's Claim and each interest holder's Interest in a class with other Claims or interests which are substantially similar. The Debtor believes that the classification system in the Plan meets the Bankruptcy Code's standard. Although the

Court must independently conclude that the Plan's classification system is legally authorized, any creditor or interest holder who believes that the Plan has improperly classified any group of Claims or interests may object to confirmation of the Plan.

At the confirmation hearing, the Court must determine, among other things, whether the Plan has been accepted by each class of creditors or interest holders whose Claims or interests are impaired under the Plan.

D. **Confirmation of Plan Without Necessary Acceptances and "Cram Down"**

The Debtor does not intend to invoke the cram down provisions of the Bankruptcy Code.

E. **Persons Entitled to Vote on the Plan**

The Bankruptcy Code provides that unimpaired classes are deemed to have accepted the Plan. Accordingly, only the votes of classes whose Claims or interests are impaired by the Plan will be counted in connection with confirmation. Generally, this includes any creditors, who, under the Plan, will receive less than payment in full of the allowed amount of their Claims on the Effective Date or in full but overtime. In determining acceptance of the Plan, votes will be counted only if submitted by a creditor or interest holder whose Claim or interest is scheduled by the Debtor as undisputed, non-contingent, and liquidated or who timely filed prior to the Bar Date with the Bankruptcy Court a proof of Claim or interest which has not been objected to or disallowed. Holders of Classes 4, 5, 6, 7 and Class 8 claims are entitled to vote.

F. **Solicitation of Acceptances**

This Disclosure Statement must be approved by the Court in accordance with Section 1125 of the Bankruptcy Code and be provided to each creditor whose Claim has been scheduled by the Debtor or who filed a proof of Claim and to each interest holder. This Disclosure Statement is intended to assist creditors whose Claims are impaired in

evaluating the Plan in determining whether to accept or reject the Plan. Under the Bankruptcy Code, acceptance or rejection of the Plan may not be solicited unless a copy of this Disclosure Statement is furnished. The Court's approval of the Disclosure Statement means that this document sets forth "adequate information" as required by the Bankruptcy Code, and does not constitute a recommendation by the Court either for or against the Plan.

## VII. TAX CONSEQUENCES OF THE PLAN

NOTHING IN THE PLAN OR THIS DISCLOSURE STATEMENT IS INTENDED TO SUGGEST THE NATURE OF THE TAX CONSEQUENCES, IF ANY, TO ANY PARTY IN INTEREST.

Each creditor or party in interest should consult their own tax professionals to determine the tax consequences, if any, of this proceeding to their situation.

Dated: New York, New York
      May 30, 2010

By: /s/

           NICHOLAS   RUVOLO  and
           EVELINA RUVOLO
           Debtors and Debtors-in-Possession

PREPARED BY:

LAW OFFICE OF NARISSA A. JOSEPH
277 Broadway, Suite 501
New York, New York 10007
(212) 233- 3060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____X

In Re                                          Chapter 11

    NICHOLAS RUVOLO
    & EVELINA RUVOLO,                        Case No.: 09-47924

                Debtors
_____X

## SECOND AMENDED PLAN OF REORGANIZATION

The Debtors and Debtor-in-possession, NICHOLAS & EVELINA RUVOLO, by and through his attorneys, LAW OFFICE OF NARISSA A. JOSEPH., proposes the following plan of reorganization pursuant toll U.S.C. §1101, et seq.

### DEFINITIONS

1.    "DEBTORS" shall mean  Nicholas & Evelina Ruvolo.

2.    "CREDITORS" shall mean all previously scheduled creditors holding claims against the debtor for secured or unsecured debts, liabilities, demands or claims.

3.    "PLAN" shall mean this Plan of Reorganization, either in its present form or as it may be amended or supplemented.

4.    "COURT" shall mean the United States Bankruptcy Court for the Eastern District of New York, including the United States Bankruptcy Judge presiding in this Chapter 11 proceeding.

5.    "CLAIM" shall mean a duly scheduled or timely filed claim which is allowed and ordered paid as provided under Title 11 of the Unites States Code and shall not include interest except as provided under 11 U.S.C. §506.

6.    "CONFIRMATION OF PLAN" shall mean the entry by the court of a final order confirming the plan in accordance with 11 U.S.C. Chapter 11.

7    "EFFECTIVE DATE OF CONFIRMATION" shall mean the day the entry of the court of its order confirming the plan becomes final and unappealable or, if appealed, the day upon which the appeal becomes final.

### ARTICLE I
### CLASSIFICATION OF CLAIMS

The claims of all creditors now scheduled, or otherwise filed in this proceeding shall be divided into the following classes:

*Administrative Claims: Class 1*

(a) Administrative expenses allowed by the Court in accordance with 11 U.S.C. §503(b), including compensation for the debtor's attorneys.

(b) Statutory claims-- All outstanding fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) will be paid on the Effective Date. The Debtors will continue to pay United States Trustee fees until entry of a final decree.

(c) Any allowed claim for taxes accruing after April 14, 2008, which are entitled to priority pursuant to Sect. 507, of the code. Currently, the Debtors do not owe any taxes.

All claims entitled to priority of payment pursuant to Bankruptcy Code §507(a)(8).

## ARTICLE II

Claims against the Debtors and interests in the Debtor (other than Administrative, Statutory, and Tax Claims) are hereby classified as follows:

(a) Class 2 creditors shall consist of the first mortgage held by Bank of America for the property located at 207 Barlow Avenue, Staten Island, New York 10308. ("BAC").

(b) Class 3 creditors shall consist of the first mortgage held by American Home Mortgage Servicing Company for the property located at 284 Giffords Lane, Staten Island, NY 10308. ("AHMSC").

(c) Class 4 creditors shall consist of the first mortgage held by JP Morgan Chase for the property located at 74 Kermit Place, Brooklyn, NY 11218. ("Chase").

(d) Class 5 creditors shall consist of the secured claim of the New York City Water Board. ("NYC Water").

(e) Class 6 creditors shall consist of those creditors whose leases have been rejected.

(f) Class 7 creditors shall consist of those creditors having unsecured claims to the extent that such claims are allowed by the Court.

## TREATMENT OF CLAIMS

Class 1: Each holder of an Allowed Administrative Claims, other than current payables, shall be paid in full on the effective date or upon such other terms that may be agreed upon by the holders of such claims and that Debtor.

Class 2- The Creditor in Class 2 is BAC which holds enforcement lien mortgage on the property owned by the Debtors located at 207 Barlow Avenue, Staten Island, New York 10308. On or before Confirmation of the Plan, the Debtor shall apply for a loan modification of the mortgage. This would allow the Debtor to return the loan to a current status; capitalize delinquent interest and escrow and reduce interest rate to 3%. Based on a current mortgage amount of $727,223.93 with an interest rate of 3% the new monthly payment including taxes, insurance, principal and interest would be $3,466.01. This class is unimpaired under the Plan.

Class 3- The Creditor in Class 3 is AHMSC which holds enforcement lien mortgage on the property owned by the Debtors located at 284 Giffords Lane, Staten Island, NY 10308. On or

before Confirmation of the Plan, the Debtor shall apply for a loan modification of the mortgage. This would allow the Debtor to return the loan to a current status; capitalize delinquent interest and escrow and reduce interest rate to 3%. Based on a current mortgage amount of $548,036.37 with an interest rate of 3% the new monthly payment including taxes, insurance, principal and interest would be $2,710.54. This class is unimpaired under the Plan.

Class 4- The creditor in Class 4 is US Bank which holds enforcement lien mortgage on the property owned by the Debtors located at 286 Giffords Lane, Staten Island, NY 10308. On or before June, 2020, the Debtor shall cure all defaults under the Chase mortgage and the mortgage shall be reinstated to its original terms. Chase to be paid pre-petition arrears in the sum of $36,447.60 over the next 120 months, with monthly installments of $304.00 per month to the arrears. Debtor will resume the regular monthly payments of $3,262.29. This class is impaired under the Plan.

Class 5- The creditors in Class 5 are Chase which consist of the first mortgage respectively on the property owned by the Debtors located at 74 Kermit Place, Brooklyn, NY 11218. Debtor will apply for a short sale for this property. Once the Debtors obtain a short sale for this property it would allow the Debtor to avoid any possible mortgage deficiencies. This class is impaired under the Plan.

Class 6—The creditor in Class 6 is the secured claim of the NYC Water for water and sewer charges to each of the Debtors' four buildings. NYC Water would be paid pre-petition arrears in the sum of $8,833.20 with interest of 9% over the life of the plan, with monthly installments of $74.00 per month to the arrears. This class is impaired under the Plan.

Class 7- The creditor in Class 7 is the lessor claim of GMAC for a 2008 Hummer that the Debtors intend to surrenders and reject the lease. This class is impaired under the Plan.

Class 8- consists of the general unsecured claims in this case including the unsecured mortgages of the Debtors four properties. All allowed unsecured claims shall be paid 5% dividend, in equal monthly payments $251.00 over 120 months. Currently the unsecured mortgage claims (which are the Debtors second and third mortgages which amounts to approximately- $538,749.00 and other unsecured claims of $63,597.65- currently filed unsecured proofs of claim-) which totals approximately $602,346.65. Currently, 5% of the unsecured creditors equals $30,117.33. This class is impaired under the Plan.

## ARTICLE III

## IMPAIRMENT OF CLAIMS

Classes 4,5,6, 7 and 8 are impaired

## ARTICLE IV
## MEANS FOR EXECUTION OF THE PLAN

The Plan will be funded by debtors' earnings, social security and rental income.

## ARTICLE V
## MODIFICATION OF THE PLAN

The debtor may propose amendments or modifications of this Plan at any time prior to confirmation, upon notice to the creditors. After confirmation the debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the order of confirmation, in such manner as may be necessary to carry out the purposes and effect of this plan.

## ARTICLE VI

Subject to ARTICLE V and ARTICLE VIII, the Court will retain jurisdiction until this Plan has been fully consummated, including but not limited to, the following purposes.

A. The classification of the claim of any creditor and the re-examination of claims which has been allowed for purposes of voting, and the determination of such objections as may be filed to creditor's claims. The failure by the debtor to object to, or to examine any claim for the purpose of voting, shall not be deemed to be a waiver of the debtor's right to object to or to re-examine the claim in whole or in part.

B. Determination of all questions and disputes regarding title to the assets of the estate and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as to the date of confirmation, between the debtor and any other party, including but not limited to , any right of the debtor to recover assets pursuant to the provisions of Title 11 of the U.S. Code.

C. The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

D. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the U.S. Code.

E. To enforce and interpret the terms and conditions of this Plan.

F. Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this court may deem necessary.

G. Upon consummation of the Plan, entry of an order concluding and terminating this case and discharging the debtor.

## ARTICLE VII
## DISCHARGE

Except as otherwise provided in the Plan or Confirmation Order, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of any and all debts of any Claims against the Debtor that arose at any time before the entry of the confirmation Order, including but not limited to all principal and any and all interest accrued thereon, pursuant to Section 1141 (d)(1) of the Bankruptcy Code. The discharge of the Debtor shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept or reject the Plan.

## ARTICLE VIII
## DURATION OF PLAN

The Plan shall run for one hundred and twenty (120) months from time of confirmation.

## ARTICLE IX

Upon completion of the plan, the Debtor shall be revested with his assets and entitled to manage his affairs without further order or this Court.

Dated: New York, New York
      May 30, 2010

                        LAW OFFICE OF NARISSA A. JOSEPH
                        Attorneys for the Debtor and Debtor-in-possession

                        By: /s/ Narissa A. Joseph, Esq
                            Narissa A. Joseph, Esq
                            277 Broadway, Suite 501
                            New York, New York 10007
                            (212) 233-3060

EXHIBIT D- PROJECTED INCOME STATMENT

# NICHOLAS AND EVELINA RUVOLO
## PROJECTED INCOME STATEMENT

| | May 1 2010 – April 30, 2010 | May 1, 2011 – April 30, 2011 | May 1, 2012 – April 30, 2012 | May 1, 2013 – April 30, 2013 | May 1, 2014 – April 30, 2014 | May 1, 2015 – April 30, 2015 | May 1, 2016 – April 30, 2016 | May 1, 2017 – April 30, 2017 | May 1, 2018 – April 30, 2018 |
|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | |
| Salary | 60,000.00 | 65,000.00 | 65,000.00 | 65,000.00 | 65,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 |
| Rental Income | 80,400.00 | 80,400.00 | 80,400.00 | 80,400.00 | 80,400.00 | 80,400.00 | 80,400.00 | 80,400.00 | 80,400.00 |
| Social Security | 28,944.00 | 28,944.00 | 28,944.00 | 28,944.00 | 28,944.00 | 28,944.00 | 28,944.00 | 28,944.00 | 28,944.00 |
| **Total Income** | $169,344 | $174,344 | $174,344 | $173,344 | $173,344 | $179,344 | $179,344 | $179,344 | $179,344 |
| **Expenses** | | | | | | | | | |
| Mortgages | $113026.08 | $113026.08 | $113026.08 | $113026.08 | $113026.08 | $113026.08 | $113026.08 | $113026.08 | $113026.08 |
| Utilities | $5500.00 | $5500.00 | $5500.00 | $5500.00 | $5500.00 | $6000.00 | $6000.00 | $6000.00 | $6,000 |
| Insurance | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| Medical | | | | | | | | | |
| Household Expenses | 15,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 |
| Miscellaneous | | | $2,000.00 | $2,000.00 | $2,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Personal Expenses | | | | | | | | | |
| U.S. Trustee Fees | 1,950.00 | 1,950.00 | 1,950.00 | $1,950.00 | $1,950.00 | $1,950.00 | $1,950.00 | $1,950.00 | $1,950.00 |
| Bankruptcy Payments For old Debts | 12,540.00 | 12,540.00 | $12,540.00 | $12,540.00 | $12,540.00 | $12,540.00 | $12,540.00 | $12,540.00 | $12,540.00 |
| **Total Expenses** | $15041608 | $15141600 | $15341600 | $15341600 | 15341600 | 156916 | 156916 | 156916 | 156916 |
| **Net Income** | $18927.92 | $22928.00 | $20928.00 | $20928.00 | $20928.00 | $22,428.00 | $22428.00 | $22428.00 | $22428.00 |